UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL HINDS,<br><br>                  Plaintiff,<br><br>v.<br><br>CHRISTOPHER BUSH,<br><br>                  Defendant. | Case No. 20-12032<br>Honorable George Caram Steeh<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT BUSH'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 69)**

## I.  Introduction

Plaintiff Michael Hinds, a prisoner proceeding in forma pauperis, sues Defendant police officer Christopher Bush under 42 U.S.C. § 1983, alleging that Bush violated his due process rights by grabbing his penis during his arrest.  ECF No. 43.  The Honorable George Caram Steeh referred the case to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 20.

Bush moves for summary judgment, arguing that he is entitled to qualified immunity, and he submits his unedited police body camera video in support.  ECF No. 69; ECF No. 69-3.  Hinds responds, submitting the

1

same video.  ECF No. 78; ECF No. 78-1.  For the reasons below, the Court **RECOMMENDS** that Bush's motion be **GRANTED**.

## II.     Background

On the night of November 23, 2017, Detroit police officer Christopher Bush and his partner conducted an investigatory stop of a van filled with smoke.  ECF No. 69-2, PageID.420.  According to Bush's affidavit, there were three passengers in the van, and Hinds was in the passenger seat "with a large bundle of cash protruding out of his pocket."  *Id.*  The passengers were ordered out of the vehicle while the officers conducted a search.  *Id*.

The primary evidence in this case is Bush's body camera footage.  As detailed below, the video shows that Bush reached into Hinds' underwear to find a wad of cash that Bush saw at the initial stop.  Officers found a gun, heroin, and cocaine base during the search of the car, but the cash was missing.  Bush then noticed a protrusion in Hinds' groin, where he then found the cash.

In his initial complaint, Hinds alleged that after he was arrested, Bush violated his Fourteenth Amendment due process rights by grabbing his penis during a search.  ECF No. 1, PageID.4-5.  After the initial screening of the complaint, Judge Steeh found that the due process claim survived:

> Plaintiff's due process claim against defendant Bush, that Bush stuck his hand in plaintiff's pants and grabbed his penis, does survive screening. *See Whitledge v. City of Dearborn*, No. 18-11444, 2019 WL 4189496, at *6 (E.D. Mich. Sept. 4, 2019) (Cleland, J.) (in a case involving a police officer groping a driver's breast during a traffic stop, the officer was on notice that "sexual assault of a traffic stop detainee amounts to a constitutional violation") (citations omitted). Other circuits have also found sexual abuse or harassment associated with a traffic stop to be a due process violation. *See, e.g., Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001); *Haberthur v. City of Raymore, Mo.*, 119 F.3d 720, 723–24 (8th Cir. 1997).

ECF No. 8, PageID.27-28. Hinds' amended complaint alleges similar facts, ECF No. 43, PageID.163, and upon review, this Court again found that Hinds' sexual assault claim against Bush survived dismissal. ECF No. 57, PageID.332. But the Court now finds that Hind's sexual assault claim should not survive summary judgment.

### III.  Analysis

#### A.

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's function at the summary judgment stage "is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

3

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must specify the portions of the record that show the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden, the burden shifts to the non-moving party to go beyond the pleadings and set forth specific facts showing a genuine issue for trial. *Id.* at 324. The Court must view the factual evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But "[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).

**B.**

Bush argues that he is entitled to qualified immunity. ECF No. 69. Qualified immunity shields "government officials such as police officers from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. City of Wyoming*, 821 F.3d 697, 708 (6th Cir. 2016), *as amended* (May 18, 2016) (cleaned up). When analyzing a police officer's qualified immunity defense, courts must consider "(1) whether the facts that a plaintiff has shown at the summary judgment stage

make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Id.* (cleaned up).  Stated simply, the first question is whether Hinds "has established his prima facie case for a violation of his constitutional rights," and the second question is whether Bush is "shielded from liability even if a violation occurred."  *Id.* (cleaned up).  The questions need not be addressed sequentially.  *Id.*  And "[a]n answer of 'yes' to both questions defeats qualified immunity, while an answer of 'no' to either question results in a grant of qualified immunity."  *Haley v. Elsmere Police Dep't*, 452 F. App'x 623, 626 (6th Cir. 2011).

**1.**

The Court first addresses which constitutional right was violated.

The Fourteenth Amendment provides that "[n]o State shall…deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  For substantive due process rights, an alleged violation of a protected liberty interest—like personal bodily integrity—does not "require a claim that some specific guarantee of the Constitution apart from the due process clause be violated.  This is a substantive due process right akin to the 'fundamental fairness' concept of procedural due process."  *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724-25 (6th Cir. 1996)

5

(cleaned up). And the right to bodily integrity "protects citizens against sexual assault at the hands of government officers." *Birdwell v. Corso*, No. 3:07-CV-0629, 2010 WL 4723459, at *2 (M.D. Tenn. Nov. 15, 2010); *see also United States v. Morris*, 494 F. App'x 574, 580 (6th Cir. 2012) (collecting cases).

But the Sixth Circuit has stated that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013). Both parties mistakenly construe the sexual assault claim as a substantive due process violation under the Fourteenth Amendment. ECF No. 69; ECF No. 78. But Hinds' claims implicate the Fourth Amendment.

"Courts [in this circuit] have recognized that an invasion of bodily integrity committed by a police officer during an arrest violates an arrestee's Fourth Amendment rights." *Carnes v. Hall*, No. 7:22-CV-31-REW-EBA, 2023 WL 2759067, at *7 (E.D. Ky. Mar. 29, 2023); *see also Whitledge v. City of Dearborn*, No. 18-11444, 2019 WL 4189496, at *7 (E.D. Mich. Sept. 4, 2019) ("Because the use of force at issue occurred during a stop…Plaintiff's claims must be analyzed under the Fourth

6

Amendment, rather than as a substantive due process claim."); *Derrick v. M.I.N.T.*, No. CV 19-13109, 2020 WL 7017384, at *3 (E.D. Mich. Sept. 16, 2020), *adopted*, 2020 WL 6335994 (E.D. Mich. Oct. 29, 2020) (construing an alleged sexual assault during a strip search incident to arrest under the Fourth Amendment).[1]

Because the alleged sexual assault happened during a search incident to arrest, Hinds' claim arises under the Fourth Amendment.

**2.**

The Fourth Amendment protects the "right of the people to be secure in their persons…against unreasonable searches and seizures." U.S. Const. amend. IV. And claims are analyzed under the Fourth Amendment's reasonableness standard. *See Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 567 (6th Cir. 2016) ("Reasonableness is the touchstone of any seizure under the Fourth Amendment.") (cleaned up).

---

[1] *See also Fontana v. Haskin*, 262 F.3d 871, 881 (9th Cir. 2001) (finding that a plaintiff's claim that police officers sexually harassed and touched her after her arrest "is better seen as a Fourth Amendment claim because she had been seized by the police."). But the Fourteenth Amendment applies when an officer's sexual assault did not occur during an arrest. *See Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (finding that Fourteenth Amendment applied to plaintiff who was raped after traffic stop because "the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct.").

Reasonableness "depends not only on when a seizure is made, but also how it is carried out." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). And evaluating police action involves "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham Graham v. O'Connor*, 490 U.S. 386, 396 (1989) (citing *Garner*, 471 U.S. at 8).

An arresting officer may lawfully conduct a full search of an arrestee incident to a lawful arrest. *United States v. Robinson,* 414 U.S. 218, 235 (1973). Reasons for the search include the "need to disarm the suspect in order to take him into custody [and]…the need to preserve evidence on his person for later use at trial." *Id.* And officers may search an arrestee's underwear to retrieve suspected contraband. *United States v. Wynn*, No. CR 22-51-DLB-CJS, 2023 WL 7449849, at *17 (E.D. Ky. Aug. 25, 2023), *adopted*, 2023 WL 6878901 (E.D. Ky. Oct. 18, 2023) ("Based on the lawful pat down and plain feel of the suspected contraband, the officers had lawful authority to search Wynn's person and to seize the drugs felt in his underwear."); *United States v. Williams*, 477 F.3d 974, 976 (8th Cir. 2007) ("The police could not have removed the drugs that Williams stashed near his genitals without making some 'intimate contact,' and we reject

8

Williams's claim that such contact is *per se* unreasonable. Some physical contact is permissible, and indeed unavoidable, when police reach into a suspect's pants to remove drugs the suspect has chosen to hide there.").

Hinds does not challenge the constitutionality of the stop or Bush's ability to search him. Rather, he argues that Bush's pat-down involved sexual groping that served no law enforcement purpose. ECF No. 78. Bush argues that any contact with Hinds' genitalia was inadvertent and nothing "more than mere negligence" as he searched for contraband in Hinds' pants. ECF No. 69, PageID.404-405.

Although facts usually must be viewed in a light most favorable to the nonmoving party at the summary judgment stage, the Court must view the evidence as "depicted by the videotape." *Scott*, 550 U.S. at 380-81. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. "Witness accounts seeking to contradict an unambiguous video recording do not create a triable issue and a court need not construe the record in such a manner that is wholly unsupportable—in the view of any reasonable jury—by the video

9

recording." *Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014) (cleaned up).

The audio and video from Bush's body camera contradict Hinds' version of the facts and any assertion that Bush's action—the alleged groping—was unreasonable under the circumstances. *See* ECF No. 69-3; ECF No. 78-1.

The video shows Hinds handcuffed and standing outside of a vehicle while officers search a blue bag and find a handgun. ECF No. 69-3, at 0:39-0:58. Looking for a "wad of cash" that Hinds had in his pocket during the initial stop of the vehicle, Bush patted along the outside of Hinds' pants and questioned him about the missing money. *Id.* at 1:50-2:13. Hinds denied having more than $20 on him. *Id.* Bush replied that Hinds was playing him like "a fool" and that he would search the van. *Id.* at 2:14-2:33. Hinds stood by while the officers searched the vehicle and recovered several plastic bags and bottles of suspected drugs. *Id.* at 2:34-4:53.

Seeing no cash in the van, Bush again asked Hinds about the money, but he gave no answer. *Id.* at 7:25-7:39. Bush unzipped Hinds' sweatshirt and, with heavy cloth gloves, checked Hinds' sweatshirt pockets and the front pockets of his jeans. *Id.* at 7:40-8:41. After patting near Hinds' groin, Bush asked, "You put your money in your pants or something?" *Id.* at 8:42-

10

8:46.  While Hinds protested that the officers cannot strip search him or touch his crotch, Bush unzipped Hinds' jeans and shone a light on the outside of his underwear, and then said, "Yeah, I think he put it in his pants."  *Id.* at 8:46-8:55.  Bush then felt around the outside of Hinds' jeans near a visible protrusion and confirmed, "Yeah, that's right, he put it in his pants."  *Id.* at 9:00-9:03.

After pulling back the elastic on Hinds' underwear a few times, Bush reached his gloved hand into Hinds' underwear.  *Id.* at 9:18.  Bush moved the base of Hinds' penis, and money was visible.  *Id.* at 9:19-9:20.  Twice reaching into Hinds' underwear, Bush pulled out large amounts of money.  *Id.* at 9:21-9:23, 9:24-9:28.  While carrying the money to the other officers at the police car, Bush said, "[Hinds] took the money out of his pants and put it in his underwear."  *Id.* at 9:45-10:00.  Bush then tried to zip up and button Hinds' jeans, and the officers placed Hinds in the backseat of the police car.  *Id.* at 10:27-10:42, 10:48-10:53.

In Bush's affidavit, he stated that he "believed that Hinds was either concealing a controlled substance or evidence of a crime in his underclothing."  ECF No. 69-2, PageID.421.  Bush recovered $2,109 from Hinds' pants.  *Id.*, PageID.421-422.

When viewed through Bush's perspective, and when applying the required deference to his judgment as a police officer searching a suspect during an arrest involving drugs and other contraband, the Court does not find that Bush acted unreasonably or violated Hinds' Fourth Amendment rights. Bush's hand momentarily contacted with Hinds' penis because Hinds chose to conceal the contraband in his underwear. *See United States v. Jackson*, 801 F. App'x 941, 947 (6th Cir. 2020) (finding that a five to ten second search of the plaintiff's pants to retrieve a suspicious object was reasonable); *Williams*, 477 F.3d at 976 ("[I]t was not unreasonable for the officers to assume the initiative by seizing the contraband that Williams secreted in his underwear."). And Bush wore thick cotton gloves during the search, undermining Hinds' argument that the search was a sexual assault.

Thus, Hinds has not shown facts supporting a violation of a constitutional right, and Bush is entitled to qualified immunity.

## IV. Conclusion

The Court **RECOMMENDS** that Bush's motion for summary judgment (ECF No. 69) be **GRANTED**.

Dated: January 2, 2024

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections lack merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 2, 2024.

                                        s/Marlena Williams
                                        MARLENA WILLIAMS
                                        Case Manager